IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-09-0219 |
| QUINDELL FORD, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Defendant Quindell Ford ("Ford") is serving a 336-month sentence arising from his involvement in a string of armed robberies that occurred between December 2008 and March 2009. (Judgment 1–2, ECF No. 151.) On February 19, 2010, Ford pled guilty to one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), and one count of Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). (Plea Agreement 1, ECF No. 68.) He is serving his sentence in FCI Berlin, New Hampshire. Now pending are Ford's Motion for Compassionate Release/Sentence Reduction (ECF No. 295), Motion to Amend (ECF No. 302), and supplemental motions (ECF Nos. 302, 309).[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Ford's Motion for Compassionate Release/Sentence Reduction (ECF No. 295) and supplemental motions (ECF Nos. 302, 309) are **DENIED** as to compassionate release, but **GRANTED** as to sentence reduction. After

---

[1] Also pending are Ford's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 254), as well as several related motions (ECF Nos. 259, 260, 285). These motions are subject to a stay and will be addressed in due course in a later memorandum.

1

consideration of recent precedent by the Fourth Circuit, as well as the severity of Ford's crimes and his conduct while incarcerated, this Court finds that Ford should not be released, but that his sentence should be reduced. As explained below, his total sentence will be reduced from a total of 336 months to a total of 284 months.[2] In short, Ford's sentence shall be reduced by 52 months.

## BACKGROUND

Ford engaged in a string of armed robberies in the Baltimore metropolitan area from approximately December 2008 to March 2009. (Presentence Investigative Report ("PSR") ¶ 1, ECF No. 318-1 *SEALED*.) During these robberies, Ford and his co-conspirators Trevon Jones and Todd Bell stole tens of thousands of dollars from businesses that engage in interstate commerce and injured multiple victims. (*Id.* at ¶¶ 8–18.) A federal grand jury issued an Indictment on April 23, 2009, charging Ford with four counts. (ECF No. 1.) The grand jury later issued a Superseding Indictment on May 28, 2009, and a Second Superseding Indictment on September 3, 2009. (ECF Nos. 12, 28.) On February 19, 2010, Ford pleaded guilty to Count Six, alleging Hobbs Act Robbery, 18 U.S.C. § 1951(a), and Count Seven, charging Ford with Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). (Plea Agreement 1, ECF No. 68.) Ultimately at sentencing on November 4, 2010, the government dismissed the remaining counts.

Ford subsequently filed a Motion to Withdraw his guilty plea on July 2, 2010, which this Court denied. (ECF Nos. 109, 115.) On November 4, 2010, Ford was sentenced as a

---

[2] Ford's sentence as to Count Six will be reduced from 240 months to 188 months. For the reasons outlined below, Ford's sentence as to Count Seven of 96 months will not be reduced.

career offender under the Armed Career Criminal Act, 18 U.S.C. § 924, due to two prior state felony convictions involving possession with intent to distribute a controlled dangerous substance. (PSR ¶¶ 95, 98, 101; Judgment 1–2.) This Court sentenced Ford to 240 months as to Count Six and 96 months as to Count Seven, to be served consecutively for a total of 336 months' imprisonment followed by a three-year term of supervised release. (Judgment 2.) Ford filed a timely appeal, and the United States Court of Appeals for the Fourth Circuit affirmed Ford's conviction on September 9, 2011. (ECF Nos. 155, 180.)

On November 20, 2012, Ford filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, which this Court denied on June 19, 2013. (ECF Nos. 182, 198.) Ford then appealed the denial of his § 2255 Motion (ECF No. 205) and filed a Motion to Alter or Amend Judgment pursuant to Federal Rule of Criminal Procedure 59(e). (ECF No. 203.) This Court denied Ford's Rule 59(e) Motion, and the Fourth Circuit dismissed his § 2255 appeal and denied a certificate of appealability. (ECF Nos. 223, 228.) However, the Fourth Circuit subsequently authorized Ford to file a successive § 2255 motion, which he did on June 23, 2016. (ECF Nos. 253, 254.) That Motion is currently being held in abeyance. (ECF Nos. 286, 287.)

Ford filed the subject Motion for Compassionate Release/Sentence Reduction on January 20, 2021. (ECF No. 295.) This motion is currently pending.

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First

Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). The Supreme Court has recently made clear "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022); *see also United States v. Brice*, No. 21-6776, 2022 WL 3715086, at *2 (4th Cir. Aug. 29, 2022) (explaining that nothing in the First Step Act prohibits district courts in this circuit from considering nonretroactive changes to the sentencing guidelines when assessing whether to reduce a sentence).

## I.   Administrative Exhaustion Requirements

On November 3, 2020, Ford sent a letter to the warden of FCI Berlin, requesting compassionate release on the same grounds alleged in this motion. (Letter to Warden, ECF No. 316-4.) On November 6, 2020, the warden denied Ford's request. (Warden Response, ECF No. 299.) Ford submitted a regional administrative remedy appeal to the BOP on November 16, 2020, appealing the warden's denial of his original request. (Ford Admin. Appeal, ECF No. 309-1.) On January 13, 2021, that appeal was also denied. (BOP Response,

ECF No. 309-1.) Accordingly, Ford exhausted his administrative remedies, and this Court has authority to consider his motion. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.      Extraordinary and Compelling Reasons

Ford argues that he is serving a disproportionately long sentence that is driven by the career offender guidelines and the Armed Career Criminal Act. (Ford Mot. 3–6, ECF No. 295; Ford Suppl. Mot. 3, ECF No. 309.) The petitioner claims that under current sentencing guidelines and recent precedent in this circuit, he would be eligible for a lesser sentence.

District courts have broad discretion to consider all relevant information at a sentencing hearing to fashion an appropriate remedy. *See Dean v. United States*, 581 U.S. 62, 66 (2017). This discretion extends to later proceedings which may modify an original sentence. *Concepcion*, 142 S. Ct. at 2399. Upon a review of a sentence under the First Step Act, district courts may consider any nonfrivolous arguments raised by the parties, including "evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes." *Id.* at 2401. Under the First Step Act, this Court will reason through the arguments of the parties and will consider any changes to the law raised by the parties which may support a reduction of sentence. *Id.* at 2404 (citing *United States v. Maxwell*, 991 F.3d 685, 693 (6th Cir. 2021)). Courts will review the resentencing of a defendant under the auspices of the law in effect as of that day, "not on the date of his offense or the date of his conviction." *Id.* at 2396 (citing *Pepper v. United States*, 562 U.S. 476, 492 (2011)).

The petitioner points to recent precedent in this circuit which reevaluated the sentencing implications of a Hobbs Act robbery conviction. In *United States v. Green*, 996 F.3d 176 (4th Cir. 2021), the Fourth Circuit held that Hobbs Act robbery does not constitute a

5

crime of violence under the career offender provisions of the United States Sentencing Guidelines. *Id.* at 185. Thus, if he were sentenced today, Ford would not be sentenced as a career offender and would instead be eligible for a lesser sentence under current guidelines. Ford therefore argues that his original sentence is significantly longer than it would be if he were sentenced today, and that this constitutes an extraordinary and compelling reason for compassionate release or a reduced sentence. (Ford Mot. 3–6; Ford Suppl. Mot. 3)

As Chief Judge Bredar of this Court recently noted in *United States v. Elzey*, "a change in career offender status, and a consequent change in the appropriate Guidelines sentencing range, can qualify as an extraordinary and compelling reason warranting compassionate release." JKB-09-0288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022). However, the court must conduct an "individualized assessment" to determine whether relief is warranted. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). As Judge Blake of this Court has noted:

> [I]n considering a defendant's motion for sentence reduction based on subsequent changes in the law that create sentencing disparities, the court should conduct an individualized and holistic assessment of the defendant's circumstances to determine whether there are extraordinary and compelling reasons for relief. The district court may appropriately consider at least the following four factors in making such assessment: (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP.

*United States v. Myers*, CCB-01-188, 2021 WL 2401237, at *3 (D. Md. June 11, 2021) (citing *McCoy*, 981 F.3d at 285–86).

6

As noted in *Elzey*, a consequent change in the appropriate sentencing guidelines may constitute an extraordinary and compelling reason warranting compassionate release or a reduction in sentence. *Elzey*, 2022 WL 316717, at *3. Thus, this Court may amend Ford's sentence if, after an individualized assessment of the relevant factors raised in *Myers* and the relevant facts of the conviction, this Court has determined that some such relief is warranted. For the reasons outlined below, Ford's sentence of 336-months imprisonment will be reduced.

Recent precedent in this circuit has reassessed the sentencing guideline implications for Hobbs Act robbery. Under the Fourth Circuit's decision in *Green*, Ford's Hobbs Act robbery conviction as to Count Six would not be considered a crime of violence under the career offender provisions of the United States Sentencing Guidelines. *See Green*, 996 F.3d at 185. As a result, if Ford were sentenced today under this precedent his criminal history category under the current sentencing guidelines would be a Category III rather than a Category VI. (*See* Letter from XUSPO Sentencing Consultants, ECF No. 309-2, at 7.) Regardless of this change, Ford's base offense level of 32 would remain the same.

With these adjustments in mind, the effective advisory sentence guidelines for Ford would be 247 to 284 months imprisonment. (*See* Letter from XUSPO Sentencing Consultants, ECF No. 309-2, at 7.) This guideline is significantly lower than the guideline range of 292 to 365 months that was calculated in the presentence report and the 336-month sentence that Ford ultimately received. (PSR ¶ 136*; Judgment 2.) As of the date of this opinion, Ford has already served approximately 160 months—more than 13 years—of his 336-month sentence. This is less than half of his sentence, but more than half of the sentence he could receive if sentenced today. Ford's 336-month sentence is therefore "grossly lengthy" compared to the

7

sentences received for similar offenses today, which supports a finding of an extraordinary and compelling reason for a reduction in sentence.

### III. 18 U.S.C. § 3553(a) Factors

As with any other compassionate release motion, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) Ford's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *accord United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *4–*5 (D. Md. Apr. 30, 2020) (weighing relevant factors to find that the defendant's sentence should be reduced to time served). On balance, these justify a sentence on the higher end of the advisory sentencing guidelines spectrum.

First, Ford has a substantial criminal history that was noted at sentencing. In 2001, he was convicted in Maryland for possession with intent to distribute cocaine and conspiracy to distribute cocaine. (PSR ¶ 95.) He violated his probation within the first six months and pled guilty to possession with intent to distribute a controlled dangerous substance. (*Id.* at ¶¶ 95, 97, 98.) His criminal history also includes fourteen other state arrests from 2000 to 2008, all of which were dropped, *nolle prossed*, or placed on the stet docket. (*Id.* at ¶¶ 102–26.) These arrests included charges involving possession with intent to manufacture and distribute

controlled dangerous substances, burglary, theft, second degree assault, resisting arrest, and others. (*Id.*) Ford was released from prison in 2006 and engaged in the string of armed robberies within three years of his release. (*Id.* at ¶¶ 1, 95.) These robberies were egregious offenses during which Ford and his co-conspirators brandished guns, struck victims with the guns, and stole money from businesses engaged in interstate commerce. (*Id.* at ¶¶ 7–18.) Ford's extensive criminal history and the nature of the armed robberies require a lengthy sentence that serves the purpose of deterrence and reflect the seriousness of the underlying offense.

Ford has also accrued various infractions while in prison, including refusing to obey orders, lying or falsifying a statement, fighting with another individual, and possession of a dangerous weapon as recent as 2020. (BOP Records, ECF No. 316-7.) Finally, this Court expressed its "firm belief" during Ford's sentencing that he would have received the same sentence "even if he were not classified as a career offender." (Sentencing Hr'g Tr. 82, ECF No. 316-3.) At sentencing the Court noted that Ford's sentence was largely related to the already-determined sentence of Ford's co-conspirators, his involvement in the robberies, his prior felony convictions, and fourteen prior arrests. (*Id.* at 82, 88–89.) The Court explicitly stated that it "didn't get hung up on the matter of the [Sentencing Guidelines] calculation," and even lowered Ford's Criminal History by one level—form level VI to V. (*Id.* at 88–89.)

Due to the nature of Ford's involvement in multiple armed robberies, his extensive criminal history, and his prison disciplinary record, any reduction in sentence in this case will not lead to Ford's immediate release. As to Count Seven, Ford was previously sentenced to 96 months imprisonment to be served consecutively with other charges. This charge carries a minimum sentence of seven years wherever a firearm is brandished but not discharged. 18

U.S.C. § 924(c)(1)(A)(ii). Considering the aggressive use of weapons during the robberies, including the use of a pistol to strike a victim, this Court imposed a sentence of 96 months as to this count. These facts, coupled with Ford's substantial criminal history and multiple infractions while incarcerated weigh against a reduction of sentence on this charge. Thus, this Court will not reduce Ford's 96-month consecutive sentence on Count Seven.

As noted above, Ford's sentence would be considered grossly disproportionate in light of the Fourth Circuit's decision in *Green*. If Ford were sentenced today, his career criminal category would be reduced from Category VI to Category III and his sentencing guidelines would be adjusted significantly. This presents an extraordinary and compelling reason to adjust Ford's sentence. With a criminal history category of III and a base offense level of 32, Ford's guidelines range as to Count Six would be 151–188 months. However, considering Ford's prior convictions, the severity and violent nature of the robberies he was involved in, as well as his conduct in prison, Ford's sentence will remain on the higher end of this spectrum. This Court will reduce Ford's sentence as to Count Six to 188 months of incarceration, which—when served consecutively with Ford's 96-month sentence as to Count Seven—will result in a total sentence of 284 months of incarceration.

## CONCLUSION

Accordingly, for the reasons stated above, it is hereby **ORDERED** this 15th day of September, 2022, that:

1. Defendant Quindell Ford's Motion for Compassionate Release/Sentence Reduction (ECF No. 295) is **DENIED** with respect to compassionate release but **GRANTED** with respect to a reduction of sentence;

2. Defendant Ford's term of incarceration is reduced to a total of 284 months;

3. All other terms and conditions remain in effect;

4. An amended Judgment and Commitment Order shall be prepared to reflect Defendant Quindell Ford's reduction in sentence; and

5. The Clerk of the Court shall send copies of this Memorandum Order to the parties.

                                                    _____/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge